# Residential

MLS # _____

| Field | Value | Field | Value | Field | Value |
|---|---|---|---|---|---|
| County | BERGEN | Town | River Edge | Block | 00909 |
| Suffix | | Lot | 00015 | Suffix | |
| Street # | 413 | N,S,E,W | | Name | THE FENWAY |
| Mode | | Price | $549,000 | Zip | 07661 |
| Directions | Howland to The Fenway or Bogert to Wayne to The Fenway | Listing Date | Mar 28, 2024 | Expiration Date | Sep 28, 2024 |
| Owner (Last, First Name) | ASLANIAN LIVING TRUST | | | Exceptions | No |
| Owner Address (if different) | | | | Owner Phone # | |
| Listing Broker ID # | 271403 | Listing Salesperson ID # | 1004291 | Co-Listing Salesperson ID # | |

**Agency Disclosure**  Seller's Agent: Yes   Transaction Broker: ____

Comp. BA (Buyer's Agent): 2%-$275   Comp. TA (Transaction Agent): ____   Comp. Sub (Subagent): ____

Dual Commission Arrangement: No   Exclusive Agency: No

Rooms: 6   Bedrooms: 3   Full Baths: 1   Half Baths: 0   Solar Yes/No: ____   Solar Leased/Owned: ____

Style: C/C   Substyle: Other   Taxes: 10441   Approx. Lot Dimensions: 60x110

Approx. Lot Sq. Ft.: 6599   Approx. Lot Frontage: ____   Sewer: Municipal   Water Source: Municipal

Ground Floor: ____

1st Floor: LR, MEIK, BR, BR, Main Full Bath

2nd Floor: BR

3rd Floor: ____

Basement: Full Finished, Laundry, Utility, Storage

Items Included: ____

Items Not Included: ____

Possession: 0-30

Schools:
- EL: Cherry Hill E.S.
- JH: River Dell M.S.
- SH: River Dell Reg. H.S.

Easements: None Known
Municipal Assessments: None Known
For Lease: No

**Showing Instructions/Agent Remarks:** (Will not appear on Customer Report)
Two day of showings. Tues.& Wed.4/2-4/3, call for more details.

**Customer Remarks**
Priced for quick sale! CASH SALE preferred. Premier location in River Edge. Calling builders and investors large lot 60x110. Renovate, expand, or build to suit. Home being strictly sold in AS/IS condition. Buyer solely responsible for all permits and CCO. Call listing agent for more details.

---

**Exclusive Listing Agreement** between Broker and Seller from: Listing Date: Mar 28, 2024   Expiration Date: Sep 28, 2024

In consideration of listing and endeavoring to procure a purchaser for the property described above at the listed price of $549,000 with a possession date of 4/30/2024, Seller (the word "Seller" includes all owners whose signatures appear on the bottom of this Listing Agreement) hereby grant to the Broker the Sole and Exclusive Right to Sell the above described property based on the terms and conditions contained in this Agreement.

Seller further agrees to pay the Broker a compensation of 4%. If the compensation is a percentage, it shall be a percentage of the offering price or of any sales price accepted by the Seller. This compensation shall be earned by the Broker and payable to the Broker if the property is sold by the Seller, the Broker, or through any other source, during the term of this Exclusive Right to Sell Listing Agreement.

Seller represents that this property is not and will not be Exclusively Listed with any other Broker during the term of this Listing Agreement. Seller further represents that the property is not and will not be listed for Rent during the term of this Listing Agreement unless mutually agreed upon terms and conditions are negotiated with the Broker.

"As a Seller you have the right to individually reach an agreement on any fee, compensation, or other valuable consideration with any Broker. No fee, compensation, or other consideration has been fixed by any governmental authority or by any trade association or multiple listing service." Nothing in this Agreement is intended to prohibit an individual Broker from independently establishing a policy regarding the amount of fee, compensation, or other valuable consideration to be charged in transactions by the Broker.

I, Diane Haroutunian (name of licensee), as an authorized representative of Christie's International Real Estate Group-Ridgewood (name of firm), intend, as of this time, to work with you as a:

____ Seller's Agent Only,   Transaction Broker, Y   Seller's Agent and Disclosed Dual Agent if the opportunity arises.**

**Separate informed consent form must be executed by Broker/Seller/Buyer

In the event that the property, or any part of it, described in this Agreement becomes subject to a written or other agreement by the Buyer and Seller or their designees, or is sold, conveyed, leased or in any way transferred within 90 days after the expiration of this Agreement to anyone to whom the Seller, Broker or the Broker's salesperson, sub-agent (participating Broker/cooperating Broker) or a Buyers' Broker/Buyers' Agent or a Transaction Broker/Transaction Agent had introduced the property during the term of this Exclusive Right to Sell Listing, the compensation as indicated above shall be earned by the Broker and payable to the Broker by the Seller, unless the Seller executes a new Exclusive Right to Sell Listing Agreement during the protection period.

Seller represents that Seller is the Owner of the above described property and Seller has the full authority to enter into this Agreement. If this Agreement is executed by anyone other than the Owner of the property, Owner represents that the individual or individuals is/are acting on behalf of the Owner and that the individual or individuals has/have furnished the Broker with a copy of that written authorization. Seller and Broker further represent that no other terms or conditions exist other than those that are contained in this Agreement.

Seller acknowledges that he/she has read this Agreement, the New Jersey Attorney General's Memorandum, the Keybox Disclosure, and has received the Consumer Information Statement and a fully executed copy of this Agreement which contains accurate information.

Authorization is hereby granted by Seller to submit this listing to the New Jersey Multiple Listing Service for distribution to all Broker members.

☐ Unless this box is checked, Seller authorizes listing to appear on all real estate web sites authorized by the Board of Directors. If checked, consumers who search for listings on the Internet will not see information about this property in response to their searches.

☐ Unless this box is checked, the property address will appear on all web sites.

| | | |
|---|---|---|
| Sales Associate Signature: *Diane Haroutunian* | 03/28/24 | Owner Signature: *Vatche Aslanian* | 03/28/24 |
| Broker/Manager Signature: *Randy Wine* | 03/28/24 | Owner Signature: | 03/28/24 |
| Print Owner Name: Vatche Aslaniaan | Owner Phone #: | Realtor Phone #: (201) 983-7819 |
| Print Owner Name: Anna Aslanian | Date: | |

Information herein deemed reliable but not guaranteed.   Revised 11/2022

New Jersey Multiple Listing Service, Inc.
405 N. Midland Ave., Saddle Brook, NJ 07663

PHILIP D. MURPHY
*Governor*

SHEILA Y. OLIVER
*Lt. Governor*

**State of New Jersey**
OFFICE OF THE ATTORNEY GENERAL
DEPARTMENT OF LAW AND PUBLIC SAFETY
DIVISION ON CIVIL RIGHTS
31 CLINTON STREET, 3RD FLOOR
NEWARK, NJ 07102

ANDREW J. BRUCK
*Acting Attorney General*

TO:       Property Owners

FROM:     Andrew J. Bruck, Acting Attorney General, State of New Jersey
          Rosemary DiSavino, Deputy Director, NJ Division on Civil Rights

DATE:     December 2021

SUBJECT:  Housing Discrimination Laws

---

The New Jersey Real Estate Commission (REC) requires every licensed broker or salesperson with whom you list your property to give you a copy of this notice. The purpose is to help you comply with the New Jersey Law Against Discrimination (LAD) and the Fair Chance in Housing Act (FCHA) (effective January 1, 2022).

## Law Against Discrimination:

Under the LAD, it is illegal to discriminate against a prospective or current buyer or tenant because of actual or perceived race, religion, national origin, nationality, ancestry, pregnancy or breastfeeding, sex, gender identity or expression, sexual orientation, familial status (defined as having care or custody of a child under age 18 or being pregnant), disability, liability for service in the Armed Forces of the United States, marital status, civil union status, or domestic partnership status. It is also illegal to discriminate against a prospective or current buyer or tenant because of any source of lawful income to be used for rental or mortgage payments. And it is illegal to make, print, or publish any statement, including print advertisements and online postings, expressing any preference, limitation, or discrimination based on any of those protected characteristics.

The LAD applies to a wide range of activities, such as advertising, selling, renting, leasing, subleasing, assigning, and showing property (including open land). Here are some issues that come up frequently in enforcing the LAD:

- The prohibition on discrimination based on source of lawful income means, for example, that a landlord cannot reject a prospective tenant because they intend to pay with subsidies or vouchers provided by federal, state, or local rental-assistance programs including Section 8 housing choice vouchers, COVID-19 Emergency Rental Assistance Program (CVERAP),



http://www.njcivilrights.gov
New Jersey is an Equal Opportunity Employer



State Rental Assistance Programs (SRAP), temporary rental assistance (TRA), Eviction Prevention Program (EPP), unemployment benefits, child support, alimony, and supplemental security income. A housing provider cannot advertise a property in any way that discriminates based on source of lawful income, including by posting advertisements that state, directly or indirectly, a refusal to accept, or express any limitation on, vouchers or subsidies. For example, advertisements that state "No Section 8," "TRA not accepted," or "This property not approved for Section 8" violate the LAD. In addition, housing providers must calculate any minimum income requirement, financial standard, or income standard based only on the portion of the rent to be paid by the tenant, rather than the entire rental amount.

- The LAD prohibits bias-based harassment in housing, including sexual harassment. If a tenant is being subjected to bias-based harassment that creates a hostile environment, and if the housing provider knew or should have known about it, the housing provider must take reasonable steps to stop it. That includes harassment by other tenants and by a housing provider's agents or employees. "Quid pro quo" sexual harassment—for example, where a building superintendent demands sex or sexual favors as a condition of making necessary repairs—is also prohibited.

- Housing providers must reasonably accommodate tenants with disabilities unless doing so would be an undue burden on their operations. For example, if a tenant shows they have a disability and that keeping an emotional support animal is necessary to afford them an equal opportunity to use and enjoy the dwelling, the housing provider must permit the emotional support animal, even despite a "no pets" policy, unless they can show that doing so would be an undue burden.

- A "no pets" rule cannot be enforced against a person with a disability who has a service or guide animal. A landlord may also not charge a tenant with a disability an extra fee for keeping a service or guide animal.

- Landlords must permit a tenant with a disability—at that tenant's own expense—to make reasonable modifications to the premises if such modifications are needed to give the tenant an equal opportunity to use or enjoy the dwelling.

- The LAD prohibits discrimination based on "familial status"—for example, discrimination against families with children under the age of 18 and pregnant people. Landlords similarly cannot use unreasonable occupancy restrictions to prevent families with children from moving in.

- Selectively inquiring about, or requesting information about and/or documentation of, a prospective tenant's or buyer's immigration or citizenship status because of the person's actual or perceived national origin, race, or ethnicity, or otherwise discriminating on such a basis, is a violation of the LAD.

- As explained in the U.S. Department of Housing and Urban Development's April 2016 Guidance document, because of widespread racial and ethnic disparities in the criminal justice system, blanket policies that make all individuals with any prior arrest or criminal conviction

ineligible to rent violate both the LAD and the federal Fair Housing Act because they have a disparate impact based on race or national origin and are not supported by a legitimate business necessity. And housing providers may not use criminal history as a pretext for intentionally discriminating based on race or national origin (for example, by applying criminal-record based restrictions against Black housing applicants but not white housing applicants).

**Penalties.** If you commit a discriminatory housing practice that violates the LAD, you may be subject to penalties up to $10,000 for a first violation, up to $25,000 for a second violation within five years of the first offense, and up to $50,000 for two or more violations within seven years.

**Other remedies.** Victims of discrimination may recover economic damages related to the discrimination (such as having to pay higher rent for another unit), as well as damages for emotional distress, pain, and humiliation. In more egregious cases, a victim may also recover punitive damages.

**Brokers.** The broker or salesperson with whom you list your property must transmit to you every written offer they receive on your property. Brokers and salespersons are licensed by the New Jersey Real Estate Commission and their activities are subject to the LAD as well as general real estate laws of the State and the Commission's own rules and regulations. The broker or salesperson must refuse your listing if you indicate an intent to discriminate on any basis prohibited by the LAD.

### Fair Chance in Housing Act:

The FCHA prohibits housing providers from asking about rental applicants' criminal records on an initial application or otherwise considering an applicant's criminal record in any way, until after they've made a conditional housing offer to the applicant, with limited exceptions as required under federal law. The goal of the FCHA is to ensure that formerly incarcerated and system-involved people have fair access to housing around the state.

Nothing about the FCHA requires landlords or housing providers to consider a person's criminal record in housing. If a housing provider does review an applicant's criminal history after a conditional offer, specific restrictions apply. A housing provider must conduct an individualized analysis of an applicant's criminal record and may only deny housing if withdrawing a conditional offer is necessary to fulfill a substantial, legitimate, and nondiscriminatory interest.

Here are some of the specific requirements for housing providers under the FCHA:

- Housing providers are prohibited from asking about applicants' criminal records until after they've made a conditional housing offer, except for convictions of drug-related criminal activity for the manufacture or production of methamphetamine on the premises of federally assisted housing, or if the applicant is subject to a lifetime registration in a state sex offender registry.

- Even after a conditional offer, a housing provider may not consider arrests or charges that did not result in a criminal conviction, expunged convictions, convictions erased through executive pardon, vacated and otherwise legally nullified convictions, juvenile adjudications of delinquency, and sealed records.

December 2021
Page 4

- If a housing provider chooses to consider an applicant's criminal history after a conditional offer, they may only consider:

    - Convictions for murder, aggravated sexual assault, kidnapping, arson, human trafficking, sexual assault, endangering the welfare of a child in violation of N.J.S.2C:24-4(b)(3);
    - Convictions for any crime that requires lifetime state sex offender registration;
    - Any 1st degree indictable offense, or release from prison for that offense, within the past 6 years;
    - Any 2nd or 3rd degree indictable offense, or release from prison for that offense, within the past 4 years; or
    - Any 4th degree indictable offense, or release from prison for that offense, within the past 1 year.

- For a conviction that can be considered, a housing provider must conduct an individualized analysis that includes:

    - Nature and severity of the offense(s)
    - Applicant's age at the time of the offense(s);
    - How recently the offense(s) occurred;
    - Any information the applicant provided in their favor since the offense(s);
    - If the offense(s) happened again in the future, whether that would impact the safety of other tenants or property; and
    - Whether the offense(s) happened on, or was connected to, property that the applicant had rented or leased

- If the housing provider intends to consider criminal history as provided for under the FCHA after a conditional offer, they cannot accept an application fee before disclosing that fact to the applicant, and offering the applicant an opportunity to provide evidence of inaccuracies in their criminal record, other evidence of rehabilitation, or mitigating factors. This requirement can be fulfilled using the Model Disclosure Statement on DCR's website, found at https://www.njoag.gov/wp-content/uploads/2021/12/Model-Disclosure-Statement_12.14.21.pdf.

- If the housing provider withdraws a conditional offer based on criminal record, they must explain in writing their justification for doing so, which can be fulfilled using the Model Notice of Withdrawal on DCR's website, found at https://www.njoag.gov/wp-content/uploads/2021/12/Model-Notice-of-Withdrawal_12.15.21.pdf. An applicant can then request the information the housing provider relied upon, and can submit mitigating information or inaccuracies related to aspects of their criminal record which may be considered under the FCHA, which the housing provider must then consider.

- If the housing provider utilizes any vendor or outside person or entity to conduct a criminal record check on their behalf, they shall take reasonable steps to ensure that the vendor or outside person or entity is conducting the criminal record check consistent with the requirements of the FCHA. The housing provider will be liable under the FCHA for relying

December 2021
Page 5

on a criminal history inquiry conducted by a vendor or outside person or entity that is conducted in violation of the FCHA if it failed to take reasonable steps to ensure compliance.

- Housing providers are prohibited from discriminating against those with criminal records in any advertising, notices, or publications. They also cannot require applicants to submit to drug or alcohol testing, or to provide information from a treatment facility.

**Penalties.** If you violate the FCHA, you may be subject to penalties up to $1,000 for a first violation within five years of the complaint, up to $5,000 for a second violation within five years of the complaint, and up to $10,000 for two or more violations within seven years.

**Other remedies.** DCR may also authorize other remedies depending on the circumstances.

For more information about the LAD, the FCHA, or if you have other questions about discrimination in the sale or rental of real property, including how to report a complaint, please visit **www.NJCivilRights.gov** or call our Housing Hotline at **(866) 405-3050**. DCR has a number of fair housing fact sheets that are available at **https://www.nj.gov/oag/dcr/housing.html**. Thank you.

_____
Andrew J. Bruck
Acting Attorney General

_____
Rosemary DiSavino
Deputy Director, Division on Civil Rights

DATE: Mar 28, 2024

Licensed Broker or Salesperson:

Diane Haroutunian
Print name

Signature: *Diane Haroutunian* 03/28/24

Property Owner:

Vatche Aslaniaan
Print name

Signature: *Vatche Aslanian* 03/28/24

Property Owner:

Anna Aslanian
Print name

Signature: 03/28/24

---

**NJMLS's Keybox Information Disclosure**

*A key box is a small safe, which is secured to the outside of the house. Within the box is placed a key to the house, which will permit access to the premises. The key box itself is locked and can only be opened with non-duplicative entry cards. These entry cards are distributed to each Broker's office, which is a participant in the New Jersey Multiple Listing Service, Inc. The major advantage of a key box system, to the homeowner, is that it permits Brokers to show the house to prospective purchasers even when the owner is not at home. Since a home may be visited by a Broker and prospective customers when the owner is not present, the owner is encouraged not to leave articles such as money, small jewelry items, etc., in the open. From time to time the MLS has been advised that items have been found to be missing during the term of a listing. The homeowner is urged to take precautions as he or she deems appropriate. Although most of the homes that are listed through the New Jersey Multiple Listing Service, Inc. employ the key box operation because of its great advantage to the homeowner, there is no obligation on any individual owner to do so.*

NJ REAL ESTATE COMMISSION
ADDENDUM TO LISTING AGREEMENT

MLS Number: _____

Property Address: 413 THE FENWAY

Town: River Edge

LISTING BROKERS USUALLY COOPERATE WITH OTHER BROKERAGE FIRMS BY SHARING INFORMATION ABOUT THEIR LISTINGS AND OFFERING TO PAY PART OF THEIR COMMISSION TO THE FIRM THAT PRODUCES A BUYER. THIS IS GENERALLY REFFERED TO AS THE "COMMISSION SPLIT."

SOME LISTING BROKERS OFFER TO PAY COMMISSION SPLITS OF A PORTION OF THE GROSS COMMISSION, USUALLY EXPRESSED AS A PERCENTAGE OF THE SELLING PRICE, LESS A SIGNIFICANT DOLLAR AMOUNT. OTHER LISTING BROKERS OFFER A PORTION OF THE GROSS COMMISSION LESS ONLY A MINIMAL LISTING FEE OR LESS ZERO.

THE AMOUNT OF COMMISSION SPLIT YOUR BROKER OFFERS CAN AFFECT THE EXTENT TO WHICH YOUR PROPERTY IS EXPOSED TO PROSPECTIVE BUYERS WORKING WITH LICENSEES FROM OTHER BROKERAGE FIRMS.

ON THIS LISTING, THE BROKER IS OFFERING A COMMISSION SPLIT OF 2%-$275
TO POTENTIAL COOPERATING BROKERS.

IF YOU FEEL THAT THIS MAY RESULT IN YOUR PROPERTY RECEIVING LESS THAN MAXIMUM EXPOSURE TO BUYERS, YOU SHOULD DISCUSS THOSE CONCERNS WITH THE LISTING SALESPERSON OR HIS/HER SUPERVISING BROKER.

BY SIGNING THIS LISTING AGREEMENT, THE OWNER(S) ACKNOWLEDGE HAVING READ THIS STATEMENT ON COMMISSION SPLITS.

Sales Associate Signature: *Diane Haroutunian*  03/28/24
Owner Signature: *Vatche Aslanian*  03/28/24
Broker/Manager Signature: *Randy Wine*  03/28/24
Owner Signature: [signature]  03/28/24

Print Owner Name: Vatche Aslaniaan
Owner Phone: _____
Realtor Phone: (201) 983-7819

Print Owner Name: Anna Aslanian
Date: _____

Information herein deemed reliable but not guaranteed.

New Jersey Multiple Listing Service, Inc.
P.O. Box U, Haworth, NJ 07641

Revised 06/2021_A